*1282 ATTORNEY DISCIPLINARY PROCEEDINGS
| .PER CURIAM.
This matter arises from a petition for consent discipline submitted by respondent, Elise M. Beauchamp, an attorney licensed to practice law in the State of Louisiana. The Office of Disciplinary Counsel (“ODC”) concurred in the proposed discipline, and the disciplinary board recommended that it be accepted. For the reasons that follow, we accept the petition and impose discipline by consent.
UNDERLYING FACTS
Investigative File No. 9763— Tubbs Matter
In January, 1997, Kathy J. Tubbs retained respondent to represent her in a domestic matter. Subsequently, respondent failed to adequately communicate with her client regarding the status and progress of the case, as well as failed to respond to requests for information. Moreover, respondent failed to diligently pursue the matter.
On July 21, 1999, Ms. Tubbs filed a complaint with the ODC. Later, respondent completed the work, which delay was partially attributable to the failure of Ms. Tubbs to timely provide sufficient information to complete the legal matter.
Respondent and the ODC stipulated that respondent’s actions in this matter violated Rules 1.3 (lack of diligence), 1.4 (failure to communicate) and 3.2 (failure to expedite litigation) of the Rules of Professional Conduct.
19.Investigative File No. 9861— Cassleberry Matter
On November 24, 1998, Colleen Cassle-berry retained respondent for $1,059.55 to represent her in a domestic matter. Initially, respondent rendered prompt services and communicated with her client. However, respondent later failed to adequately communicate with her client about the status and progress of the case, despite her client’s repeated efforts. Due to the failure to communicate, Ms. Cassleber-ry terminated respondent’s services in July, 1999.
On August 16, 1999, Ms. Cassleberry filed a complaint with the ODC and attached documentation to support her assertions.
Respondent and the ODC stipulated that respondent’s actions in this matter violated Rule 1.4 (failure to communicate).
Investigative File No. 10221— Jerome Matter
In May, 1999, Linda Jerome retained respondent for $425 to represent her in amicable divorce proceedings. After mid-July, 1999, respondent failed to communicate with her client about the status and progress of the case, despite her client’s repeated efforts. She also failed to take any further measures to expedite the divorce proceedings.
On October 15, 1999, Ms. Jerome filed a complaint with the ODC. Ms. Jerome attached documentation in support of her diligent efforts to contact respondent. The divorce was ultimately completed in December, 1999. The delay was partially attributable to respondent’s failure to include a necessary affidavit with her client’s pleadings.
Respondent and the ODC stipulated respondent’s actions in this matter violated Rules 1.4 (failure to communicate) and 3.2 (failure to expedite litigation) of the Rules of Professional Conduct.
| aInvestigative File No. 10513— Jones Ceaser Matter
In June, 1998, Rhonda Jones Ceaser retained respondent for $750 to represent *1283 her in a domestic matter. Subsequently, respondent failed to adequately communicate with her client about the status and progress of the case through her failure to respond to telephone calls and faxes. In September, 1999, Ms. Jones Ceaser forwarded respondent a certified letter regarding her concerns about respondent’s failure to pursue the matter, which was partially attributable to respondent’s inability to provide a physical address to effect service of the divorce petition on her client’s spouse.
On December 8, 1999, Ms. Jones Ceaser filed a compliant with the ODC. Three days later, respondent withdrew from the case and forwarded her client an accounting, refund of the unearned fees and a copy of the file.
Respondent and the ODC stipulated that respondent’s action in this matter violated Rules 1.8 (lack of diligence), 1.4 (failure to communicate) and 3.2 (failure to expedite litigation).
Investigative File No. 10553— Landry Matter
On April 29, 1999, Bobbie Landry retained respondent for $450 to represent her in a domestic matter. Subsequently, respondent failed to adequately communicate with her client regarding the status and progress of the case, as well as failed to diligently pursue the matter. In November, 1999, respondent wrote to Ms. Landry requesting confirmation as to whether she still wanted respondent’s services. Ms. Landry made numerous efforts to contact respondent regarding the matter, but to no avail. After Ms. Landry filed a complaint with the ODC advising of respondent’s misconduct, respondent refunded the entire retainer and withdrew as counsel.
Respondent and the ODC stipulate that respondent’s actions in this matter violated Rules 1.3 (lack of diligence) and 1.4 (failure to communicate).
_]4Investigative File No. 11130— Butler Matter
On November 26, 1997, Darrick Butler, a Florida resident, retained respondent for $1,500 to represent him in a domestic matter involving non-marital child custody and support issues, pending in the 24th Judicial District Court for the Parish of Jefferson. At the time of retention, Mr. Butler was in arrears for failing to make child support payments. Respondent made numerous efforts to have the mother of Mr. Butler’s child served with a subpoena compelling her attendance at a hearing, but to no avail. During this time and thereafter, respondent failed to adequately communicate with her client regarding the status and progress of his case, as well as failed to diligently move the matter forward.
On March 28, 2000, Mr. Butler filed a complaint with the ODC alleging respondent failed to advise him he had been held in contempt of court at a hearing for failure to satisfy his child support obligations. Further, Mr. Butler further claimed that, although respondent withdrew from the case in November, 1999, she had yet to provide an accounting.
Respondent and the ODC stipulated that respondent’s actions in this matter violated Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5 (failure to provide an accounting or return unearned fees at the termination of representation) and 3.2 (failure to expedite litigation).
Investigative File Nos. 11073 & 11998 — Lewis Matter
In September, 1993, Fanny Mae Lewis retained respondent to institute a civil suit on her behalf against multiple defendants. In 1997, a settlement was reached with one of the defendants. A portion of the settlement funds was allocated to pay court *1284 costs; however, respondent neglected to forward these court costs to the clerk of court. The error was exacerbated by Ms. Lewis’ inability to communicate with respondent because respondent had moved her office on more than one occasion. Respondent | ¿further failed to adequately communicate with her client regarding the status and progress of the case as to the remaining defendant.
On April 6, 2000, Ms. Lewis filed a complaint with the ODC. Subsequently, respondent gave a sworn statement alleging the lack of communication stemmed from her office relocations.
On August 18, 2000, Dr. Robert J. Beck, President of the Prytania Rehabilitation and Wellness Center, filed a complaint with the ODC, advising respondent had failed to satisfy a letter of guarantee dated August 21, 1995 for chiropractic services rendered to Ms. Lewis in the amount of $1,525. Dr. Beck alleged he had made numerous attempts to contact respondent regarding the outstanding account, but was unable to reach her.
Respondent and the ODC stipulated that respondent’s actions- in this matter violated Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5 (failure to provide an accounting or return unearned fees at the termination of representation) and 1.15 (failure to promptly deliver funds owed to a client or third party).
Investigative File No. 12212— Pollett Matter
On August 13, 1998, Jane Pollett retained respondént for $750 to represent her in a domestic matter. Subsequently, respondent failed to adequately communicate with her client about the status and progress of the case, despite her client’s repeated efforts.
On October 4, 2000, Ms. Pollett filed a complaint with the ODC. Respondent gave a sworn statement stating the delay in the resolution of her client’s case stemmed from the continuance of court hearings due to the illness of opposing counsel and the presiding trial judge’s judicial election.
Respondent and the ODC stipulated that respondent’s actions in this matter violated Rule 1.4 (failure to communicate).
| ^DISCIPLINARY PROCEEDINGS
Prior to the institution of formal charges, respondent submitted a petition for consent discipline, in which she stipulated to the facts and admitted to violations of the Rules of Professional Conduct. As mitigating factors, she contended her conduct was unintentional and that a great deal of work was done on each case, although those efforts were not always communicated to her clients. She maintained the misconduct stemmed in part from her heavy workload as a sole practitioner and an inadequate support staff. Also in mitigation, she raised her lack of prior discipline, lack of dishonest or selfish motive, full disclosure to the disciplinary system, personal or emotional problems,[1] remorse, and good character and reputation.[2] Finally, respondent also alleged she had refunded fees in many of the client matters *1285 and, as to the cases where a fee disputes exists, she contended she is willing to participate in the Fee Dispute Arbitration Program of the Louisiana State Bar Association.
As discipline, respondent requested that she be suspended from the practice of law for a period of one year and one day. However, she asked that the suspension be deferred in full, subject to a two-year period of probation with conditions.[3]
[yThe ODC filed a concurrence and memoranda in support of the consent discipline.

Disciplinary Board Recommendation

Because this matter was presented by petition for consent discipline, the disciplinary board recognized the only issue to be addressed was whether the proposed sanction is appropriate. In addressing the issue of sanctions, the board found that respondent’s actions were knowing,[4] and that she violated duties owed to her clients and the legal system. It noted that respondent’s clients had been harmed by her failure to promptly handle their legal matters and to reasonably communicate with them. It concluded the legal system was harmed by respondent’s failure to expedite the litigation she was involved in, which resulted in unjust delays and imposed an additional burden on the legal system.
Relying on Standard 4.42(b) of the ABA’s Standards for Imposing Lawyer Sanctions, which provides for suspension when “a lawyer engages in a pattern of neglect and causes injury or potential injury to a client,” the board determined the baseline sanction was suspension. The board accepted the mitigating factors cited in respondent’s petition. While respondent and the ODC did not cite any aggravating | ¿factors, the board recognized a pattern of misconduct, multiple offenses and substantial experience in the practice of law.
Under the circumstances, the board concluded a fully deferred suspension is appropriate under the facts. Accordingly, the board recommended that the proposed consent discipline be adopted and that respondent be suspended from the practice of law for a period of one year and one day, fully deferred, subject to a two-year period of supervised probation.
DISCUSSION
Although this matter arises from a petition for consent discipline, Supreme Court *1286 Rule XIX, § 20(B) provides that the extent of discipline to be imposed is subject to review. In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s actions caused actual harm to her clients by delaying their legal matters. However, respondent’s misconduct was negligent rather than intentional, and stemmed in large part from poor management of her law office. A deferred suspension coupled with a period of supervised probation will address respondent’s deficiencies in this regard, while at the same time protect her clients from future misconduct by respondent.
19Accordingly, we will accept the petition for consent discipline and suspend respondent from the practice of law for a period of one year and one day, deferred, subject to a two-year period of supervised probation.
DECREE
Upon review of the findings and recommendation of the disciplinary board, and considering the record, it is ordered that Elise M. Beauchamp be suspended from the practice of law in Louisiana for a period of one year and one day. It is further ordered that the suspension shall be deferred in full, and respondent shall be placed on probation for a period of two years, subject to the conditions cited in the consent petition. Any misconduct during the period of probation shall be grounds for immediate revocation of probation and/or additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
JOHNSON, J., and TRAYLOR, J., would reject the consent discipline.

. In support of her personal problems, respondent alleges that, in 1995, her husband of one year filed for divorce shortly after the birth of her son. She and her husband had been living separate ánd apart since he relocated to Central America. Respondent maintains he has only made one payment of child support since that time. Further, in 1997, her law partnership dissolved and, in 1999, she was hospitalized for a medical condition thought to be meningitis.

. As to her good character and reputation, respondent points out that she was named the LSBA’s Pro Bono Lawyer of the Year in 1997, and that she has been honored twice by the New Orleans Pro Bono Project for work done with that organization.

.The conditions were as follows:
1. Respondent shall establish and maintain an effective calendaring system and method to communicate with clients and shall obtain the assistance of the LSBA’s Loss Prevention Counsel and Practice Assistance Counsel in the creation of a proper law office management program.
2. Respondent shall enroll in and attend one full day of Ethics School administered by the LSBA’s Practice Assistance and Improvement Committee.
3. Respondent shall maintain current in law during her period of probation by satisfying all annual mandatory continuing legal education requirements of the LSBA in a timely fashion, pay all LSBA bar dues, and pay all Louisiana Attorney Disciplinary Board disciplinary assessments imposed by the Louisiana Supreme Court.
4. Respondent agrees that any violation of any terms or conditions set forth shall result in a summary revocation of probation and the immediate imposition of the remaining period of suspension that had been deferred.
5. Respondent will voluntarily participate in the LSBA Fee Dispute Resolution Program regarding fees charged or return unearned fees.
6. Respondent will also respond to all reasonable requests of her probation monitor.

.The board pointed out that, while the stipulated facts stated respondent's actions were "unintentional” or "negligent,” the ABA’s Standards for Imposed Lawyer Sanctions classify respondent’s actions as more "knowing.”