ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This disciplinary matter arises from two counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Patricia Ann Givens Dean, an attorney licensed to practice law in Louisiana.
*153 STIPULATED FACTS
Respondent and the ODC entered into a joint stipulation of facts regarding respondent’s misconduct. These stipulations may be summarized as follows:
Count I — Knight/Mackie Matter
In April 1999, respondent began representing Cynthia Knight and Georgiana Mackie in connection with a disciplinary complaint and legal malpractice suit against their former attorney. In September 1999, respondent asked Ms. Knight and Ms. Mackie to provide her with the costs to file the malpractice suit as well as certain documentation necessary to substantiate their malpractice claims. Thereafter, respondent took no further action in the matter. In February 2000, Ms. Knight and Ms. Mackie filed a disciplinary complaint against respondent alleging neglect and a failure to communicate.
|2The ODC and respondent stipulate respondent’s actions violate Rules 1.3 (neglect of legal matter) and 1.4 (failure to communicate) of the Rules of Professional Conduct.
Count II — Gair Matter
In early 1998, Jerry A. Gair, Sr., consulted attorney Phyllis Williams about representing him in connection with a domestic matter and a breach of contract suit which had been filed on his behalf by another attorney. Ms. Williams advised Mr. Gair that she would represent him in the domestic matter, but that she would refer the breach of contract matter to respondent.
In December 1998, respondent contacted Mr. Gair and advised him that she had received his file. Respondent engaged in settlement negotiations with the defendants through February 1999. At some point, the defendants agreed to settle the matter for $10,532, but Mr. Gair refused to accept the settlement check.[1]
After February 1999, respondent neglected to communicate with Mr. Gair. In July 1999, the defendants filed an ex parte motion to dismiss Mr. Gair’s suit based on the grounds of abandonment. The trial court granted the defendants’ motion. Respondent filed a timely motion to set the dismissal aside. A hearing on this motion was scheduled for October 7,1999.
In the meanwhile, Mr. Gair left a message on respondent’s telephone answering machine stating that, if she could not handle the matter, to return his file to Ms. Williams. As such, respondent forwarded Mr. Gair’s file materials to Ms. Williams. She also prepared a motion to withdraw as counsel of record in Mr. Gair’s suit, which |3she mailed to Ms. Williams. Respondent’s secretary advised Mr. Gair that his file had been sent to Ms. Williams. Additionally, respondent had returned to the defendants the check forwarded to her for partial settlement of Mr. Gair’s contractual claim.
Respondent heard nothing further and assumed Ms. Williams had taken over Mr. Gair’s case. However, Mr. Gair had been unsuccessful in communicating with Ms. Williams. As a result, he sent a letter to her asking for a return of his file. When he received his file in December 1999, Mr. Gair learned that the hearing on the motion to set aside the dismissal had taken place two months earlier and no one appeared on his behalf. At that hearing, the trial court had denied the motion to set aside the dismissal and had also denied respondent’s motion to withdraw as Mr. Gair’s counsel.
*154 Mr. Gair wrote to the trial court advising of his problems with his attorneys. The trial court scheduled a status conference in February 2000. At that conference, the trial court advised respondent that she was still Mr. Gair’s counsel. Following the hearing, respondent advised Mr. Gair that it might be possible to appeal or seek rehearing from the dismissal. Thereafter, Mr. Gair was unable to contact respondent.
In March 2000, Mr. Gair filed a complaint with the ODC advising of respondent’s misconduct. In a sworn statement taken by the ODC in August 2000, respondent stated she would write to Mr. Gair to request whether he wanted her to continue handling his matters. Sometime later, respondent directed a letter to Mr. Gair inquiring as to whether he still wanted her to continue with the representation in connection with the contract dispute, and he responded that he wanted her to complete the matter. In November 2000, Mr. Gair also sent a follow-up letter to respondent to confirm the continued representation. However, respondent neglected to take any further action on behalf of Mr. Gair.
| ¿Respondent and the ODC stipulated respondent’s actions violate Rules 1.1 (incompetence), 1.3 (lack of diligence), 1.4 (failure to communicate), 1.16(d) (failure to protect client interests upon termination of representation) and 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS

Formal Charges

Following its investigation, the ODC filed two counts of formal charges against respondent based on her conduct in the Knight/Mackie matter and the Gam matter. Respondent stipulated to the allegations of misconduct. The parties also stipulated to the mitigating factors present under the facts. Specifically, they noted that respondent had no office support staff, and received only occasional assistance from her husband and daughter. They recognized respondent has taken remedial efforts to avoid further disciplinary problems. Respondent and the ODC also stipulated that respondent had no prior disciplinary record and fully cooperated with the ODC in the instant proceedings.
A hearing was conducted for the sole purpose of presenting mitigating evidence. Respondent was the only person to testify. She stated that she had been a solo practitioner primarily in the area of domestic law since graduating from law school. Respondent asserted she was unable to afford a support staff, and was not computer literate. She testified she spent most of her time “winging it” since she had no mentor or guidance from any other attorney; however, she claimed she did go to continuing legal education seminars sponsored by the Louisiana State Bar Association for solo practitioners. Respondent testified that she did not have a formal tickler system and 1 ¡^maintained a wall calendar to keep track of critical dates. She contended she did not have malpractice insurance at the time of the misconduct due to the excessive cost.

Recommendation of the Hearing Committee

The hearing committee recognized that, because the parties stipulated to the facts and rule violations, the only issue before it was the appropriate sanction for respondent’s misconduct. The committee recommended that respondent be suspended from the practice of law for a period of one year, fully-deferred, subject to a two-year period of probation. It further recommended a monitor be appointed to supervise respondent’s law practice and assist *155 her in setting up internal procedures to ensure her cases were not neglected.

Recommendation of the Disciplinary Board

As to the Knight/Mackie matter, the board determined respondent’s failure to pursue her clients’ legal matters was negligent, and essentially stemmed from her failure to clearly communicate with her clients. As to the resulting injury, the board recognized the complainants, particularly Ms. Knight, suffered annoyance due to their inability to obtain any meaningful information regarding the status of then-legal matters.
As to the Gair matter, the board found respondent’s failure to take action to prevent her client’s suit from being dismissed as abandoned was negligent, and her failure to take remedial action was knowing. It determined respondent’s actions caused actual injury to her client, including the dismissal of his suit, delay of his legal matter and frustration.
|RThe board acknowledged as aggravating factors a pattern of misconduct and the vulnerability of the victims.[2] As mitigating factors, the board recognized absence of a prior disciplinary record, absence of a dishonest or selfish motive and full and free disclosure to the disciplinary board.
Relying on jurisprudence from this court, the board adopted the committee’s proposed sanction of a fully-deferred one-year suspension, subject to a two-year period of probation and numerous conditions.[3] In support of the fully-deferred suspension, it recognized the record indicated respondent’s misconduct essentially stemmed from respondent’s failure to employ good office procedures to track the progress of her cases and to communicate with her clients.
The. ODC filed an objection to the board’s recommendation. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX,, § 11(G).
DISCUSSION
In light of the joint stipulation, we find the ODC proved the allegations of the formal charges by clear and convincing evidence. In the Knight/Mackie matter, we 17find respondent neglected her clients’ legal matters and failed to communicate with her clients in. violation of Rules 1.3 and 1.4, respectively. In the Gair matter, we find respondent also violated Rules 1.3 and 1.4. Additionally, she failed to represent Mr. Gair in a competent manner in violation of Rules 1.1, and failed to terminate her representation properly as required by Rule 1.16(d). We also accept *156 her stipulation that she violated Rule 8.4(c).[4]
Having found professional misconduct, the sole issue presented for our consideration is the appropriate sanction for respondent’s misconduct. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Taken as a whole, respondent’s actions appear to stem from deficient law office management skills rather than from any intentional desire to harm the interests of her clients. Several mitigating factors are present, including the absence of a prior disciplinary record, absence of a dishonest or selfish motive and full and free disclosure to the disciplinary system.
1 sUnder these circumstances, we conclude a one-year suspension, fully-deferred, coupled with a one-year period of probation under the supervision of a practice monitor is an appropriate sanction.[5] Such a sanction will protect the public while giving respondent an opportunity to correct the problems which resulted in the misconduct. See In re: Cantrell, 03-0910 (La.5/2/03), 848 So.2d 507; In re: Phelps, 02-1837 (La.9/30/02), 827 So.2d 1140.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Patricia Ann Givens Dean, Louisiana Bar Roll number 19544, be suspended from the practice of law for a period of one year. It is further ordered that the suspension shall be deferred in full and respondent shall be placed on probation under the supervision of a practice monitor for a period of one year, subject to the conditions recommended by the disciplinary board. Any misconduct during the period of probation will be grounds for making the deferred portion of the suspension executory. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Apparently, Mr. Gair agreed to a partial settlement of the matter. However, the settlement check indicated it was for “full and final payment” of the dispute. As a result, Mr. Gair refused to accept the check and respondent returned it to defendants.

. The board declined to adopt the ODC's suggestion that substantial experience in the practice of law and indifference to making restitution should also be found as aggravating factors. In support, it noted the nature and history of respondent’s practice and the lack of evidence relative to restitution.

. The board recommended the following conditions of probation:
1.The probation monitor assigned in this matter should be selected as set forth in Supreme Court Rule XIX, Appendix C, and employ the standards of review set forth in that rule.
2. Respondent shall immediately contact Mr. Gair in writing to inform him that he should seek the advice of counsel relative to any claims he may have arising out of his legal matter.
3. Respondent shall obtain the assistance of the Louisiana State Bar Association's Practice Assistance Counsel, and that she implement case review and management systems appropriate to her practice.
4. Respondent shall attend the Louisiana State Bar Association’s Ethics School.

. Rule 8.4(c) proscribes a lawyer from engaging in "conduct involving dishonesty, fraud, deceit or misrepresentation.” The record is devoid of any evidence suggesting respondent acted in a deceitful, fraudulent, or dishonest manner. Apparently, the stipulation was based on a possible misrepresentation respondent made to Mr. Gair when she indicated she would continue to represent him, but took no further action. However, we believe any misrepresentation in this regard was the product of poor communication between respondent and Mr. Gair and was not intentional. Thus, we find a technical violation of Rule 8.4(c) based on respondent's stipulation, but do not find this violation is egregious.

. At oral argument, respondent indicated that she believed she was required to pay $10,000 in restitution to Mr. Gair as part of her discipline. However, the disciplinary board's recommendation contained no such requirement, nor do we find any indication from the record that respondent converted any funds owed to Mr. Gair. Accordingly, we see no need to order respondent to pay restitution.